UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| V. | : | No. CR-06-130-01S |
| | : | |
| JEFFRA DEJESUS | : | |

DEFENDANT'S MOTION TO SUPPRESS EVIDENCE AND STATEMENTS

Pursuant to F.R.Crim.P. 12(b)(3)(C) and 41(h), as well as Local Rules 12(b) and 47(a), Defendant Jeffra DeJesus hereby moves this Honorable Court for an order suppressing all evidence the government intends to introduce in its case in chief. Said evidence is particularly described in the accompanying memorandum referenced below, which memorandum is incorporated herein by this reference.

In support hereof, the Defendant relies on the Memorandum In Support Of Defendant’s Motion To Suppress Evidence and Statements filed simultaneously herewith, and on whatever additional arguments are developed at the evidentiary hearing on the within motion and additional memoranda submitted thereafter.

## REQUEST FOR EVIDENTIARY HEARING

Pursuant to Local Rules 12(e) and 47(e), the Defendant requests an evidentiary hearing on the within motion as the searches through which all evidence was obtained were conducted without benefit of warrants. See, United States v. Santana, 433 F.Supp.2d 138, 139 (D.Me. 2006), citing United States v. Lewis, 40 F.3d 1325, 1332 (1st Cir. 1994). Defense counsel suggests that such hearing should last not longer than one day.

## EXCLUDABLE TIME

Pursuant to Local Rule 12(d)(1)(A), the Defendant states that all time from the filing of this motion through and including decision thereon should be considered excludable time as defined by 18 U.S.C. §3161(h)(8)(A) and (B)(i)and (ii). The exact length of such excludable time is not presently able to be determined. The within motion is due to be filed by January 22, 2007 and the hearing on thereon is presently scheduled to occur on or after February 19, 2007, pursuant to an Order of this Court entered on December 15 and filed December 19, 2006, which Order, pursuant to Local Rule 12(f), found the time from the filing of the Defendant's Motion To Continue and For Other Scheduling Relief on December 14, 2006 through the duration of the continuance, i.e., until the March trial

calendar, excludable within the meaning of 18 U.S.C. §3161(h).

Respectfully submitted,
Jeffra DeJesus,
Defendant
By His Attorney

*/s/ Anthony M. Traini*

Anthony M. Traini (#4793)
56 Pine Street - Suite 200
Providence, RI 02903-2819
Tel. 401.621.4700
Fax 401.621.5888
E-mail: amt@atrainilaw.com

CERTIFICATE OF SERVICE

The foregoing document has been filed electronically and is available for viewing and downloading from the ECF system. Service on all parties was made electronically.

*/s/ Anthony M. Traini*

UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

UNITED STATES OF AMERICA :
:
V. : No. CR-06-130-01S
:
JEFFRA DEJESUS :

MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANT'S MOTION TO SUPPRESS EVIDENCE
AND STATEMENTS

Defendant Jeffra DeJesus has moved this Honorable Court for an order suppressing two categories of evidence obtained as a result of warrantless searches and interrogations conducted by law enforcement officers on October 31, 2006. The first consists of evidence and statements obtained as a result of the stop of Defendant's vehicle on October 31, 2006, which includes physical evidence seized from the Defendant's automobile and statements made by the Defendant to the arresting officers at the time of the stop.[1] The second is additional physical

[1]This evidence is specifically described as 1040 grams of cocaine seized from the rear passenger of the Defendant's automobile; approximately 3.6 grams of crack cocaine; 2.1 grams of cocaine (in 6 pieces), and 6.8 grams of cocaine (in 10 pieces), all seized from a hidden compartment in the dashboard area of defendant's automobile; the sum of $437 in United States currency seized from the person of co-defendant Alan Quinones; a Nextel Boost phone seized from the person of co-defendant Alan Quinones; a pink and white cloth bag, seized from the defendant's automobile; 2 silver keys seized from the defendant's person or

evidence seized from the Defendant's home following his arrest, and any statements made at the time of that search.[2] All this evidence was obtained without the benefit of search warrants.

The Facts

The present relevant facts are these (according only to discovery information provided by the government)[3]:

For a period of two months prior to the Defendant's arrest, municipal and federal law enforcement officials had been collecting information concerning certain drug dealing activities, and during that period of time allegedly determined that the Defendant was a suspect and identified both his automobile (including the license plate number) and the location of his residence.

Prior to October 31, 2006 (the date of the search here), the agents had conducted prior surveillance of the defendant and thereby determined his route from his home on

---

automobile; and 5 cell phones seized from the defendant's automobile. Additionally, the evidence sought to be suppressed includes all statements made by the Defendant to law enforcement officers (a) at the time and at the scene of his arrest in Cranston on October 31, 2006; at his home during the search thereof on October 31, 2006; and at the Cranston Police Department later that same day. See also footnote 2, below.

[2]This evidence is specifically described as the sum of $9,300 in United States currency; a Rossi .357 caliber handgun and ammunition; a digital scale; and a black satchel, all seized from the defendant's home at 66 Osborne Street in Providence. See also footnote 1 above.

[3]The operative facts will have to be fully developed at the hearing on the motion to suppress. The facts used here come primarily from the reports of the agents provided in discovery by the government.

Osborne Street in Providence to a particular location on Alto Street in Cranston. At some time on October 31, a confidential informant (whom the police claim had been reliable in the past) advised the agents that at around 3 p.m., the defendant would be traveling in his automobile to the same address on Alto Street to which he had been followed before, for the purpose of delivering a kilo of cocaine, and that he would have with him another man to “watch his back.”. Also on October 31 (at some time prior to 3 p.m.), the agents began a surveillance of the Defendant's home and identified his automobile at the premises. It appears that at the point in time at which they began that surveillance, the agents were possessed of all the information recited above, and planned, well in advance of the actual event, to conduct a car stop of the Defendant's automobile.

At approximately 3 p.m. on October 31, the Defendant and his brother left the Defendant’s home, entered the identified vehicle, and proceeded to follow the route the Defendant was previously known to follow when heading to the Alto Street location.

According to their predetermined plan, the agents stopped the car somewhere en route, saw on the rear passenger floor of the vehicle what they allege to be a

package wrapped similarly to the manner in which packages of cocaine are wrapped, and arrested the Defendant (along with his brother). They seized at that time approximately 1 kilogram of cocaine from the rear passenger area of the vehicle.[4] They then conducted a more comprehensive search of the automobile, until they found a hidden compartment in the dashboard area in which they discovered additional, separately wrapped amounts of cocaine.[5]

The Defendant was then questioned and specifically asked whether there was any additional narcotics in his home and whether he would consent to a search of his residence. The agents have stated that the Defendant made admissions concerning the narcotics activity, and that he consented to the search of his residence on the condition that he could accompany the agents on the search.[6]

The Law

Whatever evidence was obtained at the scene of the arrest, whether in the form of statements or physical evidence allegedly in plain view in the vehicle, is the

[4]Both the Defendant and his brother are charged in Count 1 of the Indictment with conspiracy to possess with intent to distribute this particular quantity of cocaine.

[5]The Defendant is not presently charged with offenses relating to the additional amounts of cocaine found during this secondary search.

[6]As will be discussed later, the Defendant is expected to testify that he consented to the residence search only because the agents told him that if he did not, his wife would be charged with possession of any contraband ultimately found on the premises.

product of the warrantless stop. The Defendant makes several legal arguments with respect to the stop of the car and seizure of evidence.

First, it is the Defendant's position that the agents did not have sufficient probable cause to stop and search the automobile, making the seizure of any evidence obtained after the stop invalid.

Second, the Defendant contends that if the agents did have sufficient probable cause, they had time and opportunity to secure a warrant, and should not have been able to circumvent that requirement by allowing the “creation” of the automobile exception to justify a warrantless search that should have been the subject of a warrant.

Third, the Defendant further contends that even if the stop of the car was valid, the secondary search of the vehicle's interior, conducted at the scene without a warrant and not as an inventory search, was invalid and the additional evidence taken from the vehicle during that search must be suppressed.

As to the second category of evidence, that obtained as a result of the residence search, the Defendant says that if the stop and search of the automobile is invalid, any evidence discovered after that, regardless of location,

and any statements made to the agents, must be suppressed pursuant to Wong Sun v. United States, 371 U.S. 471 (1963).

Secondly, the Defendant submits that even if the car stop is valid, the Defendant's consent to the residence search was obtained under duress and was not voluntary, and that the lack of valid consent, coupled with the fact that the police had no warrant for the search of the residence (and no probable cause or other justification to search the home at that time), invalidates the seizure of all the items found in the house, including without limitation the firearm that is the subject of count 2 of the indictment.[7]

(i) The Automobile Stop

Although the jurisprudence of motor vehicle searches has developed, with significant permutations, over the lengthy time since the automobile exception to the warrant requirement was first enunciated in Carroll v. United States, 267 U.S. 132 (1925), and then expanded in Chambers v. Maroney, 399 U.S. 42 (1970), current motor vehicle search and seizure law begins (generally) with Pennsylvania v. Labron, 518 U.S. 938 (1996), and, for purposes of the present case, Maryland v. Dyson, 527 U.S. 465 (1999).

[7]The search of the residence also produced ammunition for the gun, a digital scale, and $9,300 in United States currency.

Since it is necessary here to distinguish Dyson from the present case, the analysis should begin there.

The reported facts in Dyson were that a confidential informant advised a local law enforcement officer that the defendant, a known drug dealer[8], would be returning to Maryland from a drug purchase in New York operating a described rented motor vehicle with a particular license plate number, and that he would have with him an amount of cocaine. Id. The law enforcement officer investigated the information and corroborated that the described automobile was in fact rented to the defendant. When the defendant re-entered Maryland he was stopped, and the narcotics were seized from a duffel bag found in the trunk. Id., at 466. The Supreme Court upheld the vehicle search and the seizure of the narcotics on the ground that however motor vehicle search jurisprudence had developed over the years, there was no separate exigency requirement for motor vehicle searches (citing Labron) (id., at 466-467); however, a motor vehicle search would not be deemed unreasonable only

[8]Although Dyson appears factually similar to the present case, there is nothing in the opinion to indicate on what basis the defendant there was determined to be a "known drug dealer" [compare, e.g., United States v. Montegio, 274 F.Supp.2d 190, 199 (D.R.I. 2003), and United States v. Frazier, 423 F.3d 526, 532-533 (6th Cir. 2005); nor is there any indication as to what information is sufficient to make this a probative fact supportive of a warrant. The opinion also does not describe the basis on which the court determined that the informant was credible and reliable.

if there were enough probable cause to have secured a warrant, albeit that no warrant was obtained [citing United States v. Ross, 456 U.S. 798, 809 (1982)]. Id., at 467.

The second, and related issue, is whether the non-drug evidence obtained at the same time, i.e., the Defendant's statements, can be used for any purpose. The Defendant maintains that whatever he said to the agents is inadmissible if the stop of the vehicle was invalid and the statements were not sufficiently attenuated from the stop.[9] See, e.g., Montegio, 274 F.Supp.2d at 203; United States v. Torres, 274 F.Supp.2d 146, 157-158 (D.R.I. 2003).

The first question here, therefore, is whether the facts will demonstrate that the agents had sufficient probable cause to obtain a warrant had they sought one.[10] What it takes to establish probable cause in this case will be for the court to decide, and depend on the facts and circumstances of the individual case,[11] and the government

---

[9]The statements in question are clearly inculpatory, as the Defendant is alleged to have told the agents at the time of his arrest that he was in fact in the process of delivering the cocaine to the Cranston location and that he had a gun at his residence. The firearm is the subject of count 2 of the indictment.

[10]The Defendant does not suggest that he is able to here argue all the relevant legal issues on the motion to suppress. This memorandum is submitted for the purpose of adequately raising the issues reasonably identifiable now with the Court in order to obtain the hearing necessary to develop the facts to support a further post-hearing memorandum.

[11]See, e.g., United States v. Brookins, 345 F.3d 231, 236 (4th Cir. 2003); see also, United States v. Le, 377 F.Supp.2d 245, 253 (D.Me.

bears the burden of proof on the issue. United States v. Lopez, 380 F.3d 538, 543 (1st Cir. 2004), cert.denied, 543 U.S. 1074 (2005). The task here will therefore involve evaluating the strength of probable cause information supplied by confidential informants—an exercise usually, but not always performed in the context of search warrants. See, e.g., United States v. Link, 238 F.3d 106, 108-110 (1st Cir. 2001); United States v. Woodbury, 2006 WL 1495011 (D.Me. 05/24/06); United States v. Patrick, 3 F.Supp.2d 95 (D.Mass. 1998). Should the court decide that probable cause was lacking, all the physical evidence obtained from the automobile, as well as the Defendant's statements must be suppressed.[12]

A second and somewhat related issue is that, despite the Supreme Court's decisions in Labron and Dyson, the rationale of cases like United States v. Howard, 406 F.Supp.2d 215, 224-226 (N.D.N.Y. 2005), keep open the question of whether law enforcement officers, possessed of what they believe to be sufficient probable cause, should be required to utilize the warrant process rather than rely

---

2005), aff'd. sub nom., United States v. Cao, 471 F.3d 1 (1st Cir. 2006).

[12]This case requires a determination of probable cause to stop and search a vehicle other than in cases where the vehicle is initially stopped for a traffic violation. Compare, Whren v. United States, 517 U.S. 806 (1996).

on the automobile exception. This also involves consideration of whether in those circumstances such conduct is, in effect, allowing (or causing) the creation (or use) of an exigency in order to avoid a more strict procedure. See, e.g., United States v. Curzi, 867 F.2d 36, 40 (1st Cir. 1989). See also, United States v. Arias, 992 F.Supp. 832, 837-840 (D.W.Va. 1997).[13]

(ii) The Secondary Automobile Search

In the event the automobile stop is upheld, the second question to be decided is whether the more exhaustive warrantless, non-inventory search of the car was valid.[14] Ordinarily, areas of an automobile may be searched incident to a lawful arrest[15] or with the consent of the operator; likewise, automobiles that have been lawfully stopped and

[13] In the present case, the Defendant has submitted that the agents did not have sufficient probable cause to stop and search the vehicle. If the Court disagrees, the relevant question on this issue will ultimately be when did sufficient probable cause exist and of what did it consist.

[14] The Defendant recognizes that this may become a moot point because the indictment does not charge him with possession of any of the additional narcotics found during that search. The government may choose to lodge those charges at another time, however, or to use this additional evidence at trial (although it has not suggested doing either). In addition, whether this evidence was lawfully obtained may have an impact at sentencing, depending on the circumstances of its seizure. See, United States v. Acosta, 303 F.3d 78, 84-86 (1st Cir. 2002); and United States v. Nichols, 438 F.3d 437, 439-444 (4th Cir. 2006)(post-Booker).

[15] See, e.g., United States v. Alicea-Cotto, 2006 WL 3484304 (D.P.R. 11/30/06), *9. Those searches are generally based on examining the area in the defendant's immediate control for instrumentalities or conditions that may be dangerous to the officers. But see, Thornton v. United States, 541 U.S. 615, 623 (2004).

seized may be proper subjects of inventory searches according to "standardized objective procedures." United States v. Rivera, 2006 WL 3147338, *16-19 (D.P.R. 10/31/06). The exhaustive search conducted of this vehicle after the Defendant and his brother were under arrest and secured outside the vehicle by several police officers does not appear to fall into this category. Similarly, this was not an inventory search because there was apparently no attempt to inventory what possessions of the Defendant (or other items) were actually located in the vehicle that may be claimed later to have disappeared. The facts presently known here indicate that the additional narcotics were located in a hidden compartment in the dashboard area.

(iii) The Residence Search

Finally, the validity of the search of the residence depends upon whether the Defendant's admissions concerning gun[16] as well as his purported consent to search the house were properly obtained. As noted above, the Defendant submits that his consent to the residence search was obtained solely because he was told by the agents that if he refused to consent, they would eventually obtain a

[16]To the extent that the admission concerning the existence and location of the firearm bear on whether there was probable cause to search the residence (in the absence of consent), the admissibility of the statement must be decided as indicated above.

warrant and his wife would be charged with possession of any contraband located in the house. See, e.g., United States v. Lee, 317 F.3d 26, 33 (1st Cir.), cert.denied, 538 U.S. 1048 (2003). The agents have indicated (in the discovery material) that the Defendant conditioned his consent only upon whether he could accompany the agents on the search. The facts on this issue will be more fully developed at the hearing and the Court will then be in a position to make the appropriate findings.

To the extent that the residence search rests entirely upon the Defendant's consent, the court must determine whether that consent was knowingly and voluntarily given or obtained under duress. If the latter, then not only the gun, but all the physical evidence taken from the house, as well as any statements made by the defendant at the premises that are incident to the search, would be subject to suppression. See, e.g., United States v. Ivy, 165 F.3d 397, 403-404 (6th Cir. 1998).

In any event, however, the burden of proof on this issue rests with the government. United States v. Matthews, 2006 WL 1581574, *5 (D.Mass. 03/01/06).

Respectfully submitted,
Jeffra DeJesus,
Defendant
By His Attorney

*/s/ Anthony M. Traini*
Anthony M. Traini (#4793)
56 Pine Street - Suite 200
Providence, RI 02903-2819
Tel. 401.621.4700
Fax 401.621.5888
E-mail: amt@atrainilaw.com

CERTIFICATE OF SERVICE

The foregoing document has been filed electronically and is available for viewing and downloading from the ECF system. Service on all parties was made electronically.

*/s/ Anthony M. Traini*