UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

UNITED STATES OF AMERICA

v. CR No. 06-062-ML

PEDRO MICHAEL GONCALVES

## MEMORANDUM AND ORDER

Pedro Michael Goncalves ("Defendant") was indicted on May 10, 2006, for possession of cocaine base with intent to distribute in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A)-(C), as well as possession of a firearm in violation of 18 U.S.C. §§ 922(g) and 924(c). Defendant now moves to suppress evidence seized from his car during warrantless searches conducted after his arrest on May 3, 2006.[1] The Government asserts that the searches were executed pursuant to the automobile exception to the warrant requirement of the Fourth Amendment. For the reasons set forth below, Defendant's motion is denied.

### I. Findings of Fact

Based on the parties' written submissions and evidence received at a hearing that was held over the course of two days, the Court makes the following findings of fact. Detective Scott R. Sullivan ("Sullivan") is a member of the Pawtucket Police Department and a Special Federal

---

[1] The car Defendant was driving on the day he was arrested is registered to his girlfriend, Julia Baptista. On a motion to suppress, the Defendant has the burden of establishing that his Fourth Amendment rights were violated by the search and seizure. See Rakas v. Illinois, 439 U.S. 128, 130-31 n.1 (1978); United States v. Dall, 608 F.2d 910, 914 (1st Cir. 1979). Although Defendant has not specifically addressed the issue of his standing to challenge the search of the car in question, (nor has the Government objected) the Court assumes without deciding, that for the purpose of this motion, Defendant has standing.

Officer assigned to the FBI and Rhode Island State Police High Intensity Drug Trafficking Area (HIDTA) Task Force. Sullivan received information from a confidential informant ("C.I.") that Defendant was selling crack cocaine in the Providence and Pawtucket areas. Sullivan testified that he has used this C.I. in the past, and that the C.I. has always provided reliable information. Specifically, the C.I. informed Sullivan that Defendant resided in a third-floor apartment at 83-85 Pomona Avenue, Providence. The C.I. stated that Defendant stored cocaine at his mother's residence at 406 West Avenue, Pawtucket. Furthermore, the C.I. told Sullivan that Defendant was known to use two vehicles, including a white 1998 Lincoln Continental, R.I. Registration CY-807. The C.I. also told Sullivan that Defendant used the Lincoln Continental to make narcotics deliveries. Sullivan testified that the C.I. informed him that Defendant was armed with a semi-automatic pistol.

Sullivan verified the addresses and observed the white Lincoln Continental parked in the driveway at 83-85 Pomona Avenue at different hours of the day and night. Sullivan also stated that he observed the Defendant using this vehicle almost daily. A criminal background check of the Defendant revealed a conviction for carrying a concealed weapon. The check also revealed an arrest on September 15, 2003, by the Providence Police Department for the manufacture, possession, and delivery of cocaine - a charge still pending at the time of Sullivan's investigation. After corroborating the C.I.'s information, Sullivan organized two controlled purchases of cocaine from Defendant in March and April 2006. Defendant was observed driving the Lincoln Continental during the March controlled purchase.

On May 2, 2006, using the information from his investigation, Sullivan obtained two search warrants, one for the third-floor apartment at 83-85 Pomona Avenue, Providence, and the

other for the residence at 406 West Avenue, Pawtucket. The warrants also authorized the search of Defendant. On May 3, 2006, Sullivan and members of the HIDTA Task Force conducted surveillance of Defendant's apartment at 83-85 Pomona Avenue. Both Sullivan and Detective Jon Theroux testified that the surveillance team's plan was to wait until Defendant left his apartment and then have a marked patrol car make a traffic stop before officers executed the search warrants. Sullivan testified that the officers thought it was safer to execute the warrants when Defendant was not on the premises, especially given the information that he was armed.

On the morning of May 3, 2006, the surveillance team observed Defendant leave 83-85 Pomona Avenue in the white Lincoln Continental. According to Sullivan, the team began to follow Defendant in unmarked cars in an attempt to position the marked police cruiser to make the stop of Defendant's vehicle. Sullivan testified that at some point during this effort to effectuate a traffic stop, Defendant passed one of the surveillance team's unmarked vehicles and "made," or identified, the surveillance. Sullivan testified that Defendant's driving changed abruptly after passing a member of the surveillance team. He testified that Defendant started taking quick turns, failed to stop for stop signs or red lights, and was traveling at a high rate of speed. Sullivan stated that the officers turned on their emergency lights and attempted to pull Defendant's vehicle over.

Following Defendant onto route I-95, Sullivan testified that although the car he was in reached speeds of 100 m.p.h., he was unable to overtake the Defendant's vehicle. After Defendant used his cell phone, Sullivan became concerned that Defendant was calling accomplices to destroy evidence at one of the residences. Sullivan ordered several of the cars to terminate the pursuit and secure the apartment at 83-85 Pomona Avenue. Sullivan contacted the

Pawtucket Police and requested that a marked police cruiser be positioned in front of 406 West Avenue to prevent Defendant from entering the house. Sullivan testified that the surveillance team followed Defendant off of I-95 and into Pawtucket. Defendant, still traveling at a high rate of speed, turned onto West Avenue. Seeing the police cruiser blocking the street in front of his mother's house, Defendant made an abrupt turn into his mother's driveway and accelerated. Officer Darren Rose ("Rose") testified that after Defendant turned his vehicle into the driveway, both Rose and his partner got out of their cruiser and began to run up the driveway after the Defendant. Rose testified that he observed the Defendant's car strike a Jeep Cherokee, parked in the driveway, before coming to a stop. Consistent with this testimony, Sullivan stated that it appeared from the substantial damage to the Jeep's rear left hand bumper and the Lincoln Continental's front right quarter, that Defendant's vehicle had sideswiped the Jeep.

After coming to a stop, Defendant exited the vehicle and ran around the back of the house, fleeing from police. Rose testified that he and his partner pursued Defendant around the house. The officers eventually apprehended Defendant across the street from 406 West Avenue. As the two uniformed officers subdued Defendant, members of the surveillance team, including Sullivan, arrived on-scene and assisted the uniformed officers in handcuffing Defendant. Rose testified that Defendant was placed in the back of the police cruiser, parked at the bottom of the driveway, approximately 80-100 feet from the Lincoln Continental.

Immediately after securing the residence at 406 West Avenue, Sullivan tried to open the driver's side door of the Lincoln Continental. Finding the door locked, Sullivan approached Rose and his partner for the keys to the vehicle. Rose reported that no keys were found in Defendant's possession. Sullivan and the other officers proceeded to walk the entire route that

the uniformed officers had chased Defendant, but were unable to locate the keys. At this point, Sullivan tried the other doors of the Lincoln Continental and found that one of the doors was unlocked. Sullivan instructed one of the members of his team to search the Lincoln Continental while he returned to the residence to execute the search warrant.

A search of Defendant's car uncovered a Sig Sauer .45 caliber semi-automatic pistol, fully loaded and with the hammer cocked back, jammed between the battery and the air filter of the engine compartment. A quantity of powdered cocaine was also found hidden in the gas cap. Sullivan testified that the engine compartment and gas cap are places officers have frequently recovered contraband from in past investigations. After the vehicle was towed back to the State Police barracks in Lincoln, a search of the passenger compartment uncovered some paperwork and a .22 caliber bullet. Defendant now moves to suppress all evidence obtained during the warrantless searches of his vehicle.

**II. Discussion**

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures . . . ." U.S. CONST. amend. IV. "Subject to limited exceptions, warrantless searches of private property are per se unreasonable." United States v. Lopez, 380 F.3d 538, 543 (1st Cir. 2004) (citations omitted). The Government contends that the warrantless searches of Defendant's vehicle are permissible under the well-established "automobile exception" to the Fourth Amendment warrant requirement.[2] See Carroll v. United States, 267 U.S. 132, 153-56 (1925); United States v. Ross,

[2] Defendant makes many of his arguments, if not most, in the context of the "search incident to arrest" exception to the Fourth Amendment warrant requirement. See Chimel v. California, 395 U.S. 752, 762-63 (1969); New York v. Belton, 453 U.S. 454, 460 (1981). The

Case 1:06-cr-00062-ML-DLM Document 58 Filed 01/17/2007 Page 6 of 10

456 U.S. 798, 809 (1982); Lopez, 380 F.3d at 543. "Under the 'automobile exception,' the only essential predicate for a valid warrantless search of a motor vehicle by law enforcement officers is 'probable cause to believe that the [vehicle] contains contraband or other evidence of criminal activity.'" United States v. McCoy, 977 F.2d 706, 710 (1st Cir. 1992) (quoting United States v. Panitz, 907 F.2d 1267, 1271 (1st Cir. 1990)).

**A. Probable Cause**

As Defendant correctly points out, the Government bears the burden of proving the lawfulness of the search. See Lopez, 380 F.3d at 543. Specifically, the Government "must demonstrate that law enforcement officers had a belief, reasonably arising out of circumstances known to the seizing officer, that the vehicle contained that which by law is subject to seizure and destruction." Id. (citation and internal quotations omitted). The inquiry into probable cause focuses on what the officer knew at the time of the search, United States v. Goldman, 41 F.3d 785, 787 (1st Cir. 1994), and should evaluate the totality of the circumstances. United States v. Vongkaysone, 434 F.3d 68, 73 (1st Cir. 2006).

At the time Defendant was arrested and his car searched, police had probable cause to believe they would find contraband in Defendant's vehicle. Detective Sullivan had received information from a C.I., whom he had successfully relied on in the past, that Defendant was

---

main thrust of Defendant's arguments is that the "search incident to arrest" exception does not apply when he was arrested, handcuffed, and placed in the back of a locked cruiser 80-100 feet from his vehicle. See generally Thornton v. United States, 541 U.S. 615, 621-22 (2004) (finding that an arrestee's status as a "recent occupant" may turn on his temporal or spatial relationship at the time of the arrest and search). While there may be some modest question as to whether these searches can be justified as incident to the arrest, the Court need not, and does not, address that question. The Government has properly identified, and relied on, the automobile exception to the warrant requirement to justify the warrantless searches.

selling cocaine from both an apartment at 83-85 Pomona Avenue, Providence, as well as his mother's residence at 406 West Avenue, Pawtucket. The C.I. informed Sullivan that Defendant was using a white 1998 Lincoln Continental to make narcotics deliveries in and around Providence and Pawtucket. The C.I. also told Sullivan that Defendant was armed with a semi-automatic pistol. Subsequently, Sullivan corroborated many of the details provided by the C.I. through an independent investigation. See United States v. Khounsavanh, 113 F.3d 279, 284 (1st Cir. 1997) ("The risk that the informant is lying or in error need not be wholly eliminated. Rather, what is needed is that the probability of a lying or inaccurate informer has been sufficiently reduced by corroborative facts and observations." (citation and internal quotations omitted)). Sullivan confirmed Defendant's address at 83-85 Pomona Avenue, and his daily use of the Lincoln Continental, through surveillance of the apartment. He also confirmed Defendant's mother lived at 406 West Avenue. Sullivan conducted a criminal background check and learned that Defendant had a conviction for carrying a concealed weapon, as well as a pending charge for the manufacture, possession, and delivery of cocaine. Significantly, Sullivan observed Defendant driving the Lincoln Continental during the C.I.'s controlled purchase of cocaine from Defendant.

Defendant's actions on the day of his arrest are also highly important for the purpose of determining probable cause. Sullivan testified that Defendant's driving changed dramatically after passing one of the unmarked cars conducting surveillance. Defendant's driving became erratic and indicative of someone trying to elude pursuit. See Illinois v. Wardlow, 528 U.S. 119, 124 (2000) ("Headlong flight - wherever it occurs - is the consummate act of evasion: It is not necessarily indicative of wrongdoing, but it is certainly suggestive of such."). Although

unmarked, the surveillance team's vehicles contained flashing emergency lights to alert Defendant to the identity of the officers. In his attempt to evade police, Defendant made an abrupt turn and accelerated up his mother's driveway, sideswiping another car in the process. Finally, and perhaps most telling, Defendant's keys were never found after he exited the vehicle and ran from police. A reasonable officer could conclude from these actions, as well as the information from the C.I., that Defendant's vehicle contained contraband, i.e. cocaine and a gun, that he did not want the police to find. Given all of the above, the Court concludes that the police possessed probable cause to believe that Defendant's vehicle contained contraband.

**B. Exigent Circumstances**

Defendant argues that even if there was probable cause to search the vehicle, no exigent circumstances existed that justified the officers conducting a search without a warrant. At the time of the first search, Defendant was handcuffed in the back of a locked police cruiser between 80-100 feet away from the Lincoln Continental. Several officers were present in the vicinity of the vehicle. For all intents and purposes, Defendant argues, the car was immobile. Defendant asserts that officers, therefore, had sufficient time to contact a magistrate and secure a warrant if they believed they had probable cause. Defendant misconstrues the automobile exception.

The First Circuit has acknowledged that "so long as the vehicle search is supported by probable cause, no particular exigency (beyond the inherent mobility of any motor vehicle) need exist." Panitz, 907 F.2d at 1271. In fact, "law enforcement personnel who have probable cause to believe there is contraband in an automobile may nevertheless conduct a warrantless search, 'even after [the vehicle] has been impounded and is in police custody.'" United States v. Chapdelaine, 616 F. Supp. 522, 529 (D.R.I. 1985) (quoting Michigan v. Thomas, 458 U.S. 259,

261 (1982)), aff'd, 795 F.2d 75 (1st Cir. 1986). "It is thus clear that the justification to conduct such a warrantless search does not vanish once the car has been immobilized . . . ." Thomas, 458 U.S. at 261.

The automobile exception to the warrant requirement was initially based on a vehicle's ready mobility and the exigent circumstances created by that mobility. See Carroll, 267 U.S. at 153-55; Chambers v. Maroney, 399 U.S. 42, 51 (1970) (noting that "the opportunity to search is fleeting since a car is readily movable"). Since California v. Carney, 471 U.S. 386, 391-92 (1985), however, "when the Supreme Court articulated an additional justification for warrantless car searches, namely that a car's occupants have a lesser expectation of privacy in their car than in their home due to our society's pervasive regulation of automobiles, the necessity of a special exigency has waned." United States v. Graham, 275 F.3d 490, 509 (6th Cir. 2001). Indeed, the Supreme Court has now explicitly stated that "under [its] established precedent, the 'automobile exception' has no separate exigency requirement." Maryland v. Dyson, 527 U.S. 465, 466 (1999) (per curiam).

Although the police might have had time to secure a warrant to search the automobile, there was no requirement that they do so.[3] Lopez, 380 F.3d at 543; McCoy, 977 F.2d at 710;

---

[3] In essence, Defendant asserts that there was no danger of the car being moved and the evidence being destroyed. The Court notes, however, that Sullivan testified that officers observed Defendant use his cell phone during the pursuit by police. Sullivan stated that he became concerned that Defendant was contacting an accomplice to destroy evidence at one of the residences. Furthermore, the keys to Defendant's vehicle were never located. The car was registered to Defendant's girlfriend, and as Defendant characterizes it, "parked" in his mother's driveway. It is entirely plausible that one of these individuals could have attempted to remove either the vehicle, or the contraband it contained, before the police could obtain a warrant. See Thomas, 458 U.S. at 261 n.2 (noting possibility that unknown confederates could return to car parked on roadside to remove the secreted contraband).

Panitz, 907 F.2d at 1271-72. Probable cause alone suffices to justify the search of Defendant's vehicle. Id. As for the search itself, both at the time of Defendant's arrest and later after the vehicle had been impounded, the scope of a warrantless search of an automobile "is defined by the object of the search and the places in which there is probable cause to believe that it may be found." Ross, 456 U.S. at 824. "A search for cocaine could logically take the officers into every nook and cranny of a vehicle . . . ." Chapdelaine, 616 F. Supp. at 528. This includes the engine compartment and the gas tank. Thus, as there was probable cause to justify the search and seizure, this case fits squarely within the confines of the automobile exception to the warrant requirement.[4]

## III. Conclusion

For the foregoing reasons, Defendant's motion to suppress the evidence seized from his vehicle is DENIED.

SO ORDERED.

Mary M. Lisi
Chief United States District Judge
January 17 , 2007

[4] Although initially raised and distinguished by the Government, Defendant attempts to argue that Coolidge v. New Hampshire, 403 U.S. 443 (1971), applies to the facts of this case. After a careful review of Coolidge, the Court agrees with the Government, for all of the reasons stated in its response to Defendant's motion, that Coolidge is inapplicable to the facts of this case. See, e.g., United States v. Brookins, 345 F.3d 231, 237-38 (4th Cir. 2003).